IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC L. FELDER,                                    08-CV-491-BR

          Plaintiff,                               OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


KAREN STOLZBERG
11830 S.W. Kerr Parkway, #315
Lake Oswego, Oregon  97035
(503) 251-0707

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITTANIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1  -  OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Eric L. Felder seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which he denied Plaintiff's application
for Disability Insurance Benefits (DIB) and found Plaintiff
ineligible for Supplemental Security Income (SSI) payments under
Titles II and XVI of the Social Security Act.  This Court has
jurisdiction to review the Commissioner's decision pursuant to
42 U.S.C. § 405(g).

    Following a thorough review of the record, the Court **AFFIRMS**
the Commissioner's final decision and **DISMISSES** this matter.


### ADMINISTRATIVE HISTORY

    Plaintiff filed his most recent applications for DIB on
April 24, 2003, and SSI on October 17, 2003, alleging an onset

2   -  OPINION AND ORDER

date of April 15, 2001.  Tr.[1] 42, 437.  The applications were denied initially and on reconsideration.  Tr. 42-45, 51-53, 440-49.  An Administrative Law Judge (ALJ) held a hearing on September 20, 2006.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff provided a sworn statement on September 22, 2006, instead of testifying at the hearing.  A vocational expert (VE) testified at the hearing.

The ALJ issued a decision on October 19, 2006, in which he found Plaintiff was not entitled to benefits.  That decision became the final decision of the Commissioner on February 25, 2008, when the Appeals Council denied Plaintiff's request for review.  Tr. 7.

## BACKGROUND

Plaintiff was 43 years old at the time of the hearing. Tr. 468.  He has a high-school education.  Tr. 498.  Plaintiff has previously worked as a house painter, auto-body sander, Goodwill donation center attendant, service station attendant, and leather renewer.  Tr. 93, 109, 136.  While working as a house painter in the mid-1980s, Plaintiff fell from a roof and injured his back and alleges he has had difficulties with his back since that time.  Tr. 256.

---

[1] Citations to the official transcript of record filed by the Commissioner on June 11, 2008, are referred to as "Tr."

3   -  OPINION AND ORDER

Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence. After reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 25-29.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v.*

*Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*,

454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknow-ledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which "is an assessment of the sustained, work-related physical and mental activities" that the claimant can still do "on a regular and continuing basis" despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80

6  -  OPINION AND ORDER

F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date. Tr. 24.

At Step Two, the ALJ found Plaintiff has the severe impairments of degenerative disc disease of his lumbar spine, moderate central canal stenosis, degenerative joint disease in his right shoulder, osteoarthritis in his knees, major depressive disorder, attention-deficit hyperactivity disorder (ADHD), anxiety disorder, and substance-abuse disorder.

At Step Three, the ALJ found Plaintiff does not have an impairment or a combination of impairments that meets or equals a Listing.  The ALJ assessed Plaintiff's RFC and found he can lift ten pounds occasionally and less than ten pounds frequently; can stand or walk for two hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; can push or pull without limitation; can occasionally use ladders, stoop, kneel, crouch, or crawl; can frequently balance or climb stairs or ramps; should avoid concentrated exposure to hazards; can understand and carry out simple tasks; can occasionally understand and carry out detailed tasks; and can occasionally engage in brief interactions with co-workers or the general public.  Tr. 26-27.

At Step Four, the ALJ found Plaintiff cannot perform his

past relevant work.  Tr. 30.

At Step Five, the ALJ found Plaintiff is able to perform jobs that exist in significant numbers in the national economy. Tr. 30.  The ALJ identified two examples of such work drawn from the testimony of the VE:  small-products assembler and booth cashier.  Tr. 31.  Thus, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits.


<u>**DISCUSSION**</u>

Plaintiff contends the ALJ erred when he (1) improperly rejected the opinion of Wayne Englander, M.D.; (2) improperly rejected Plaintiff's testimony; and (3) improperly rejected the testimony of Plaintiff's roommate, Marianne Bryant, all of which allegedly resulted in the ALJ posing an inadequate hypothetical to the VE.

**I.    The ALJ did not err when he gave little weight to the opinion of Dr. Englander.**

Plaintiff contends the ALJ erred when he rejected the opinion of Dr. Englander that Plaintiff met Listing 1.04.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v.*

9   -  OPINION AND ORDER

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id*. at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id*. at 600.

Dr. Englander has treated Plaintiff since June 2002 for, among other things, back pain, knee pain, anxiety, ADHD, and depression.  Tr. 293-347.

**A.  Dr. Englander's opinion.**

On April 28, 2006, Dr. Englander wrote a note "to whom it may concern" in which he stated Plaintiff suffers from chronic pain related to degenerative disc disease, arthritis in his knees and hips, ADHD, and depression.  Tr. 373.

On September 19, 2006, Dr. Englander completed a question-
naire at the request of Plaintiff's attorney.  Tr. 414-21.  In
the questionnaire, Dr. Englander stated Plaintiff suffers from
constant pain due to osteoarthritis of his cervical and lumbar
spine, knees, and shoulders and lumbar spinal stenosis with
nerve root compression at L5.  He stated Plaintiff also suffers
from depression and panic disorder.  Tr. 414.  In addition,
Dr. Englander noted Plaintiff had a positive straight leg test
and positive apprehension sign in both knees.  Tr. 415-21.
Dr. Englander also found Plaintiff cannot rise from a chair
without assistance and requires the use of a cane to walk.  Tr.
416-17.

Dr. Englander assessed Plaintiff's RFC and found Plaintiff
can walk fewer than 12 blocks; can stand or walk for less than
two hours in an eight-hour workday with a change in position
every 15 minutes; can sit for about two hours in an eight-hour
workday with a change in position every half hour; can lift and
carry less than 10 pounds occasionally and 20 pounds rarely; must
lie down two to four times each day; can rarely twist or climb
stairs and can never kneel, stoop, bend, crawl, crouch, or climb
ladders; and must avoid exposure to extremes of temperature,
wetness, humidity, noise, fumes, odors, dusts, gasses, poor
ventilation, and all hazards.  Tr. 415-21.  Dr. Englander stated
Plaintiff's ability to reach, push, and pull are affected by his

condition.  Tr. 416.  He also stated Plaintiff's depression decreases his coping ability and causes behavioral changes, and Plaintiff's panic disorder frequently interferes with his attention, concentration, and ability to cope with stress. Tr. 418-19.

Dr. Englander concluded Plaintiff would need to work at a reduced pace if he was employed full-time at even light or sedentary levels of exertion, Plaintiff's pain would likely increase if he worked full-time, and Plaintiff would miss more than four days of work each month.  Tr. 418-19.  Finally, Dr. Englander opined Plaintiff's impairments met Listing 1.04.

**A.  Inconsistency with the medical record.**

The ALJ gave little weight to the opinion of Dr. Englander on the ground that, among other things, it was inconsistent with the medical record as a whole.  *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9ᵗʰ Cir. 2004)(ALJ may discount opinions not supported by medical record as a whole).  For example, on June 15, 2002, David Morrell, M.D., an examining physician, noted Plaintiff did not have any difficulty getting on and off of the examination table or removing his shoes.  Tr. 261.  Dr. Morrell also noted Plaintiff had a normal gait and was able to walk in a straight line in a heel-toe fashion without difficulty.  Tr. 262. Dr. Morrell reported Plaintiff was not experiencing any joint crepitus, joint effusion, or radiculopathy.  Tr. 265.

12   -   OPINION AND ORDER

Dr. Morrell found Plaintiff had full strength in his upper and lower extremities, symmetric reflexes, and normal pinprick sensation. Tr. 265. In addition, Dr. Morrell found Plaintiff had a normal ability to reach, hold, grip, and manipulate objects; a normal ability to rise; a normal ability to stand and to walk for short periods; and did not require the use of a cane. Tr. 265.

On August 2, 2002, Linda Jensen, M.D., a reviewing physician, assessed Plaintiff's RFC and found he can lift 20 pounds occasionally and 10 pounds frequently; stand or sit for six hours in an eight-hour workday; perform unlimited pushing and pulling; frequently climb, balance, kneel, crouch, and crawl; and occasionally stoop. Tr. 266-70. In addition, Dr. Jensen found Plaintiff's statements as to his symptoms were only partially consistent with the medical record because Plaintiff did not have any sensory loss, weakness, or neurological problems. Tr. 271.

On November 5, 2002, Mary Ann Westfall, M.D., also assessed Plaintiff's RFC and found he can lift 20 pounds occasionally and 10 pounds frequently; stand or sit for six hours in an eight-hour workday; perform unlimited pushing and pulling; frequently climb ramps or stairs and balance; occasionally climb ladders or scaffolds; and occasionally stoop, kneel, crouch, and crawl. Tr. 272-77.

An October 17, 2002, an MRI ordered by Dr. Englander shows

13  -  OPINION AND ORDER

normal alignment of Plaintiff's lumbar spine with preserved vertebral heights and normal marrow signal.  Tr. 342.  The MRI also shows mild desiccative signal loss and mild posterior endplate lipping at Plaintiff's L4-L5 disc and moderate central canal stenosis.  Tr. 342.  In addition, the MRI reflects mild bilateral foraminal narrowing at L4-S1.  Tr. 342.  X-rays of Plaintiff's shoulders on the same day show a mild narrowing of the acromioclavicular joint in Plaintiff's right shoulder with inferior spurring present on the distal clavicle.  Tr. 343.

On March 19, 2003, neurologist Randall Chestnut, M.D., an examining physician, noted Plaintiff's lumbar problems caused alteration in his range of motion and stiffness, but he also found Plaintiff did not display any atrophy, power loss, or a neurologically abnormal gait.  Tr. 278.  Dr. Chestnut noted Plaintiff 's diagnostic imaging studies reflected a degenerated L5-S1 segment with approximately 80% disc height loss, anterior posterior spurring, and central and neuroforaminal stenosis.  Tr. 278.  Dr. Chestnut opined Plaintiff was a candidate for disc fusion.  Tr. 279.

On February 10, 2004, Paul Guastadisegni, Ph.D., an examining physician, diagnosed Plaintiff with depression, ADHD, anxiety disorder, and alcohol dependence.  Tr. 290.

Dr. Guastadisegni assessed Plaintiff's GAF[2] score at 58 and
recommended therapy as well as substance-abuse treatment.
Tr. 290.  Finally, Dr. Guastadisegni opined Plaintiff's mental-
health issues "by themselves" were not disabling, but they could
"contribute to difficulties in working if not appropriately
managed."  Tr. 291.

On April 6, 2004, Paul Rethinger, Ph.D., a reviewing
physician, found Plaintiff suffers from the impairments of ADHD,
depression, anxiety, alcohol dependence, and cannabis abuse.
Dr. Rethinger found Plaintiff's impairments result in only mild
limitations in his activities of daily living; mild limitations
maintaining concentration, persistence, or pace; and moderate
difficulties in maintaining social functioning.  Tr. 348-58.
Dr. Rethinger also found Plaintiff has only moderate limitations
in his ability to carry out detailed instructions, to interact
appropriately with the public, to get along with coworkers or
peers without distracting them or exhibiting behavioral extremes,
and to be aware of normal hazards and to take appropriate

---

[2] The GAF scale is used to report a clinician's judgment of
the patient's overall level of functioning on a scale of 1 to
100.  A GAF of 41-50 indicates serious symptoms (suicidal
ideation, severe obsessional rituals frequent shoplifting) or any
serious impairment in social, occupational, or school functioning
(*e.g.*, few friends, unable to keep a job).  A GAF of 51-60
indicates moderate symptoms (*e.g.*, flat affect and circumstantial
speech, occasional panic attacks) or moderate difficulty in
social, occupational, or school functioning (*e.g.*, few friends,
conflicts with peers or co-workers).  *Diagnostic and Statistical
Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

precautions.  Tr. 369-70.

On April 6, 2004, Sharon Eder, M.D., a reviewing physician, assessed Plaintiff's RFC and found he can lift ten pounds occasionally and less than ten pounds frequently; stand or walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; perform unlimited pushing and pulling; occasionally climb ladders or scaffolds; occasionally stoop, kneel, crouch, and crawl; and frequently climb stairs or ramps. Tr. 362-67.

## B.  Plaintiff's impairments and Listing 1.04.

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Englander that Plaintiff's impairments meet Listing 1.04.

To satisfy the requirements of Listing 1.04, Plaintiff must show he suffers from herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture that has resulted "in compromise of a nerve root."  20 C.F.R. subpt P., app. 1. The record reflects Drs. Morrell and Chestnut diagnosed Plaintiff with spinal stenosis.  Accordingly, Plaintiff meets this threshold requirement.  Plaintiff's condition, however, must also result in "compromise of a nerve root" with

> A.   Evidence of nerve root compression
> characterized by neuro-anatomic distribution
> of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is

> involvement of the lower back, positive
> straight-leg raising test (sitting and
> supine). . .
>
> or
>
> C. Lumbar spinal stenosis resulting in
> pseudoclaudication, established by findings
> on appropriate medically acceptable imaging,
> manifested by chronic nonradicular pain and
> weakness, and resulting in inability to
> ambulate effectively, as defined in 1.00B2b.

20 C.F.R. subpt P., app. 1.

As noted, the record reflects even though Dr. Englander

noted Plaintiff's positive straight-leg raising test and limited

range of motion, Plaintiff has not suffered from any muscle

weakness, sensory loss, or reflex loss.  In addition, the record

does not reflect Plaintiff is unable to "ambulate effectively."

1.00B(2)(b) defines an inability to ambulate effectively as

> an extreme limitation of the ability to walk;
> *i.e.*, an impairment(s) that interferes very
> seriously with the individual's ability to
> independently initiate, sustain, or complete
> activities.  Ineffective ambulation is
> defined generally as having insufficient
> lower extremity functioning (see 1.00J) to
> permit independent ambulation without the use
> of a hand-held assistive device(s) that
> *limits the functioning of both upper
> extremities*. (Listing 1.05C is an exception
> to this general definition because the
> individual has the use of only one upper
> extremity due to amputation of a hand.)

20 C.F.R. subpt P., app. 1.  Although Plaintiff contends it is

necessary for him to utilize a cane to walk, at most "that limits

the functioning" of only one upper extremity.  *Id*.  In addition,

17  -  OPINION AND ORDER

Dr. Morrell stated Plaintiff does not necessarily require a cane. Tr. 265. Thus, the record reflects Plaintiff does not meet the requirements of Listing 1.04.

The Court concludes on this record that the ALJ did not err when he gave little weight to Dr. Englander's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**II.   The ALJ did not err when he rejected Plaintiff's testimony.**

Plaintiff contends the ALJ erred when he rejected Plaintiff's testimony.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742,

750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

As noted, the ALJ found Plaintiff has the severe impairments of degenerative disc disease of his lumbar spine, moderate central canal stenosis, degenerative joint disease in his right shoulder, osteoarthritis in his knees, major depressive disorder, ADHD, anxiety disorder, and substance-abuse disorder.  In addition, Drs. Morrell and Chestnut noted spinal stenosis and degenerative disc change and Dr. Guastadisegni diagnosed Plaintiff with depression, ADHD, anxiety disorder, and alcohol dependence.  Accordingly, Plaintiff has satisfied the first part of the *Cotton* test.  Because the ALJ did not determine Plaintiff is malingering, the ALJ must provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony.  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's testimony was not entirely credible because, among other things, Plaintiff's earnings record reflects a poor work history.  Tr. 28.  A sporadic work history with years of unemployment between jobs can "negatively affect [a claimant's] credibility regarding [his] inability to work." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The

record reflects Plaintiff has worked only sporadically and did not have any earnings for the years 1996, 1997, and 1999. Tr. 72.  Plaintiff seeks to explain this history by stating he may not have been reporting his earnings to the Internal Revenue Service, but, as noted by Defendant, that fact serves to further undermine Plaintiff's credibility.

In addition, the ALJ found Plaintiff's testimony was inconsistent with the medical record as a whole.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).  As noted, the record reflects Plaintiff only suffers from mild to moderate impairments and limitations.  Tr. 260-65, 266-70, 272-77, 278-79, 283-91, 348-60, 362-67.  In addition, Plaintiff has not sought treatment beyond medication for his symptoms, and the record does not indicate Plaintiff sought or received any mental-health treatment for his anxiety, ADHD, or depression.

On this record, the Court concludes the ALJ did not err when he found Plaintiff's testimony not entirely credible because he provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## IV.  Lay-witness testimony.

Plaintiff contends the ALJ erred when he rejected the lay-witness testimony of Marianne Bryant.

20   -   OPINION AND ORDER

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

On June 3, 2002, Ms. Bryant, who lives with Plaintiff, completed a Third Party Information on Activities of Daily Living and Socialization in which she stated Plaintiff sees and speaks to family members every day, has appropriate conversations, leaves home two or three times each week to do food shopping and visit friends. Tr. 117-18. Ms. Bryant also stated Plaintiff watches television six to eight hours each day, is able to drive two or three times each week, mows the yard, washes the car, prepares meals, and gardens. Tr. 119-23. In addition, Ms. Bryant stated Plaintiff has difficulty sleeping, does not take any medications, and can participate in activities for only about 30 minutes without resting. Tr. 123-28.

On October 24, 2003, Ms. Bryant completed an Alcohol and Drug Use Questionnaire in which she stated Plaintiff drinks one or two six packs of beer each day, but that his alcohol use is not excessive and does not affect his ability to care for

21  -  OPINION AND ORDER

himself.  Tr. 185.

On October 24, 2003, Ms. Bryant also completed a Third-Party Adult Function Report, in which she stated Plaintiff spends each day watching television, reading, and sleeping.  Tr. 187. Ms. Bryant stated Plaintiff prepares sandwiches for himself daily, shops for food, does laundry, and does yard work when he is able.  Tr. 189-90.  Ms. Bryant also stated Plaintiff does not like being around other people and has difficulty getting along with others.  Tr. 191-92.  In addition, Ms. Bryant stated Plaintiff's impairments affect his ability to lift, squat, sit, kneel, bend, stand, walk, climb stairs, concentrate, and understand.  Tr. 192.

The ALJ "considered with caution" the lay-witness testimony of Ms. Bryant because she "has a personal relationship with the claimant and possesses neither the expertise nor the motivation to offer an objective or functional assessment."  Tr. 27.  A lay witness is not required to have expertise in offering functional assessment, and, therefore, the ALJ's reliance on the fact that Ms. Bryant lacked this expertise is not a legally sufficient reason for rejecting her testimony.

The ALJ, however, may find the nature of a claimant's "close relationship" with a lay witness undermines her credibility when the lay witness is "possibly 'influenced by her desire to help'" the claimant.  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir.

22  -  OPINION AND ORDER

2006). *See also Kintner v. Astrue*, No. CV-07-3048-CI, 2008 WL 680201 (E.D. Wash. Mar. 7, 2008)(lay-witness not "disinterested" or objective due to her close relationship with the claimant). Here the record reflects Ms. Bryant could have been motivated by financial gain. For example, she stated she allows Plaintiff to live with her "for free until he can get some sort of income." Tr. 190.

The Court concludes on this record that the ALJ did not err when he rejected the lay-witness testimony of Ms. Bryant because he provided legally sufficient reasons supported by substantial evidence in the record for doing so.

Based on the foregoing, the Court finds the ALJ did not err when he omitted the limitations asserted by Dr. Englander, Plaintiff, and Ms. Bryant from the hypothetical posed to the VE.


<u>**CONCLUSION**</u>

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of February, 2009.


/s/ Anna J. Brown

_____

ANNA J. BROWN


23 - OPINION AND ORDER

United States District Judge

24  -  OPINION AND ORDER